## Goodwin Bros. v. Cook.

June 4, 1948.

Stoll, Muir, Townsend, Park & Mohney and William A. Hamm for appellant.

Lewis & Weaver and Murray L. Brown for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Reversing.

This suit was filed by appellee to enjoin appellant from terminating a motor vehicle "Dealer Agreement." Upon final submission the Chancellor permanently enjoined the cancellation of the contract upon the ground that appellee was doing business as a "dual agency."

Appellant for a number of years has been the "Direct Dealer" for the Chrysler Corporation in the promotion and sale of its Dodge and Plymouth motor vehicles, acting as the distributor for the manufacturer. Since 1931 appellee has been the retailer or "Dealer" for appellant. The contract here involved was executed between the parties in 1938. Under its terms appellee was given the exclusive agency to sell Dodge and Plymouth motor vehicles in a specified territory and the non-exclusive agency for parts and accessories.

The contract provided under Article 8 that it should terminate without notice in the event of "the assumption of any other line of motor vehicles for sale by Dealer." Article 9 of the contract provided for termination by either party upon notice in the following language:

"Accordingly it is agreed that this agreement may be terminated at any time upon not less than ninety (90) or more than ninety-five (95) days' written notice by Direct Dealer or upon not less than fifteen (15) or more

than twenty (20) days' written notice by Dealer, but either of these periods may be reduced by mutual written consent of Dealer and Direct Dealer.''

For many years appellee had sold, in addition to vehicles handled by appellant, Pontiac automobiles and International trucks. This dual agency admittedly violated the provision in Article 8 above first quoted, but had continued with the knowledge and consent of appellant.

In the latter part of August 1946 a representative of appellant called upon appellee and advised him that the factory had become insistent upon enforcing this provision of the contract, and that it would be necessary for appellee to give up his Pontiac and International agencies if he wished to continue as the Dodge and Plymouth dealer. At that time, and in subsequent conversations between appellant's representatives and appellee, the latter proposed that he operate his different agencies in separate buildings. He even submitted to appellant rough sketches of a proposed new building that he had in mind.

Around the first of September 1946 two of appellant's representatives called on appellee and again advised him that the factory was insisting that its dealers should represent the Dodge Division of the Chrysler Corporation exclusively. According to appellee's testimony, appellant had no personal objection to his dual agency, but the factory was insisting this practice be abandoned.

On September 7, 1946 appellee wrote a letter addressed to Dodge Bros. Corp. at Detroit, Michigan. The first sentence in this letter read as follows:

''Messrs. Bill Goodwin and Arch Hamilton of Goodwin Bros. called on us this week and notified us that they had been advised by Dodge Bros. Corp. that it would become imperative that we dissolve our dual agency setup.''

This letter then went on to explain appellee's present and proposed methods of doing business, and closed with the hope that ''we go along together during these critical times.'' The letter was acknowledged by the

Dodge Division and referred appellee to appellant for a settlement of the matter.

According to the evidence for appellant, one of its representatives again called on appellee some two weeks after the visit by Mr. Goodwin and Mr. Hamilton, and finally advised him that he must make up his mind as to whether or not he wished to keep the Dodge agency by giving up his representation of other motor vehicle manufacturers. Appellee insists that this last visit came after the first of the following year, but we do not think the time of this visit is of vital importance.

On November 27, 1946, appellant sent appellee a letter which stated:

"We regret to advise you that in order to conform with the factory policy of having no Dodge Dealers with dual franchises, we hereby give you ninety days notice of the termination of your Dodge and Plymouth Dealer Agreement."

On February 24, 1947, this suit was filed and a restraining order was issued.

Appellee's position is this: Since appellant had for many years acquiesced in his business practice of representing other automobile manufacturers, they had waived the provision in the contract permitting cancellation on this ground, and by virtue of other acts of appellant they are estopped to terminate the contract on any grounds. Appellee attempted to prove that in the latter part of 1945 one of appellant's representatives had advised him that he would definitely receive a certain quota of motor vehicles delivered to appellant; by virtue of this assurance he had begun taking orders; after his conversations with appellant's representatives around the first of September 1946, he had constructed a new building which he would not have done if he thought the contract with appellant was to be terminated; the building cost $14,000; and he was entitled to have the contract continued in force.

The Chancellor apparently took the view that appellant's acquiescence in the non-exclusive representation by appellee over a number of years prevented appellant from terminating the contract at any time because of the violation of this provision. We are unable

to agree with this theory since appellee was given positive notice that appellant would no longer waive this important element of the contract. The waiver affected the accrued rights of the parties, but not their future rights. However that may be, the real question in the case is whether or not the notice given on November 27 by appellant was effective to terminate the contract in ninety days.

It is to be noted that under Article 9 of the contract either party could terminate it upon notice, with or without cause. Appellee takes the position that under this provision the notice was ineffective because it stated as the ground for cancellation the doing of business under a dual franchise. Appellee cites cases to the effect that where notice of cancellation is based on one ground, the party attempting to terminate cannot rely upon some other reason. This principle is not applicable where the notice is given under the provision in the contract which permits cancellation without cause.

In the present case, appellants could terminate the contract on ninety days' notice without assigning any ground. The notice given indicates that the actual reason for cancellation was the controversy over the dual agency. Since appellant could cancel for no reason at all, the reference to the dual agency neither added to nor took from the effectiveness of the notice.

This brings us to appellee's contention that the written contract had been modified to such an extent that appellant could not terminate it for any cause or no cause until he had made enough money to pay for his new building. This claim is based on the alleged agreement of appellant's representatives in 1945 to furnish appellee a certain percentage of motor vehicles received by appellant. Appellee maintains that by virtue of this conversation a new contract came into being whereby appellee would keep his agency and get his quota of cars. The difficulty with this argument is that the arrangement was so indefinite as to have no legal effect whatsoever. Nothing was said about the prices of the cars or how many would be delivered, nor was any time fixed for delivery or for a termination of this admittedly temporary agreement. Appellee states that this new arrangement was to continue in effect until

the competitive situation had become readjusted and the motor vehicle shortage had ceased. His brother testified that the agreement was to continue "during the emergency or until such time as cars were again available."

It is our conclusion that this understanding was not intended by either party to bind either one to do anything. If it was supposed to constitute an actual agreement, it was not intended to supersede, but be governed by the terms of the original contract. If it was intended to be an entirely new contract to take the place of the original, it was not in writing, and was so palpably indefinite as to be unenforceable by either party.

Appellant argues other persuasive reasons why no injunction should have been granted in this action, but we believe what has been said above sufficiently disposes of the matter. The parties had entered into a contract which was almost wholly executory. It had an inherent instability in that either party could cancel it at any time upon notice, with or without cause. The notice given by appellant was effective to accomplish this purpose. Assuming, which is very doubtful, that appellee had any right to equitable relief, we cannot find on this record any estoppel or other reason which justified the granting of an injunction.

For the reasons stated, the judgment is reversed with directions to dismiss appellee's petition.